NORTH AMERICAN LAND CO. (GILMORE v.). See Case No. 5,448.

NORTH AMERICAN STEAMSHIP CO. v. LORILLARD. See Case No. 12,333.

NORTHAMPTON INSURGENTS. TRIAL OF. See Cases Nos. 5,126 and 5,127.

NORTH BENNINGTON BOOT & SHOE CO. (ODORLESS RUBBER CO. v.). See Case No. 10,438.

NORTH BRITISH, ETC., INS. CO. (JOHNSON v.). See Case No. 7,400.

---

## Case No. 10,316.

### The NORTH CAPE.

[6 Biss. 505; [1] 8 Chi. Leg. News, 121.]

District Court, N. D. Illinois. Jan., 1876.

CITY TAX AGAINST VESSEL NOT DUTY OF TONNAGE —JURISDICTION OF ADMIRALTY — ASSESSMENT AGAINST VESSEL BY NAME — WHAT CONSTITUTES VALID ASSESSMENT AND WARRANT — SECRET OWNERSHIP.

1. The assessment of a vessel owned in a city, by the city assessor, for city taxes, is not a "duty of tonnage" within the meaning of Const. U. S. art. 1, § 10, cl. 1.

2. A court of admiralty has jurisdiction to try the question of unlawful seizure of maritime property for taxes or duties.
[Cited in Haller v. Fox, 51 Fed. 299; Re Fassett, 142 U. S. 480, 12 Sup. Ct. 298.]

3. It is not a valid objection that the assessment and warrant are against the vessel by name and not against the owner.

4. The owner not having listed the vessel for taxation as required by law, an assessment by the assessor, showing the name of the ap-

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

parent owner, the description of the property, and its valuation, is sufficient to found a legal warrant. It is too late for the owner to object after the warrant has been issued.

5. An assessor is not required to look into the secret ownership of personal property, but may assess it against the apparent owner by possession or muniment of title.

This was a libel by Jacob Johnson and others against the schooner North Cape, George Von Hollen and the city of Chicago, for possession of the schooner North Cape. The admitted facts are that said schooner was on the 1st day of May, 1874, owned by the libellants, Jacob Johnson, Spier Amundson, and Nels Peterson—Johnson owning one-half, and the others each a quarter interest—Johnson and Amundson residing in this city, and Peterson at Lake View. Said vessel was registered, enrolled, and licensed under the laws of the United States in the office of the collector of the port of Chicago, in the name of Johnson, as owner, and was engaged at and since that time in the business of commerce upon the navigable waters of the United States, between the port of Chicago and ports of other states, being a vessel of over twenty tons burden. Between the 1st of May and the 1st of July, in the year 1874, said vessel was assessed by the assessor of the city of Chicago at the valuation of $7,000, said assessment being entered on the assessment book in the following form:

A complete list of all the taxable personal property of the South division of the city of Chicago. Ill., according to the assessment roll, as returned or revised by the board of assessors for the year 1874.

List of Vessels Registered in this District and Not Returned.

| Name of Vessel. | Name of Owner. | Valuation. | Tax. |
|---|---|---|---|
| North Cape. | Jacob Johnson. | $7,000 | ........ |

By an ordinance duly passed by the common council of the city of Chicago, on the 9th day of November, 1874, a tax of eighteen mills on the dollar was levied and assessed for the fiscal year 1874, on all real and personal property in said city, at the valuation thereof shown by the assessment for that year as made by the city assessor. And on the 9th day of December, 1874, a warrant was issued to George Von Hollen, collector of said city, authorizing and directing him to collect said tax. The warrant was in the same form as the assessment as far as regards the description of the schooner and name of owner and her valuation, with an additional column in which the tax was carried out and fixed at $126, which is eighteen mills on her valuation. The warrant was in the usual form and directed the collector to collect the taxes assessed from the persons and property against whom the same was assessed. This tax remaining unpaid, the collector, on the 13th of September, 1875, levied upon and took possession of said schooner under the assumed authority of his said warrant, and held the same by virtue of said levy at the time of the filing of the libel in

this case. It was also admitted that the practice of the city assessor in making assessments upon vessel property has been and is to assess the same to the owner or owners with their other personal property when the owners list or return the same to the assessor, but when the owners fail to return or list their vessel property, the vessel is assessed by name in the name of her owner as appears by the register in the office of the United States collector of customs of the port of Chicago.

Magee, Oleson & Adkinson, for libellants.

Francis Adams, Asst. Corp. Counsel, and John C. Richberg, for respondents, the collector and city of Chicago.

BLODGETT, District Judge. It is claimed by the libellants that the levy upon this vessel was void: First, because this is a "duty of tonnage," within the meaning of the third clause of section 10 of the first article of the constitution of the United States. Second, because said assessment and warrant for the collection of said tax are void, for the reason that the assessment is against the vessel itself by name, and the warrant runs against the vessel and not against the owner.

On the part of the respondents, Von Hollen and the city of Chicago, it is urged, by way of demurrer to the libel, that a court of admiralty has no jurisdiction in the case made by the libel and facts in this case, and that the only remedy is to be found in the courts of law.

I do not find that this precise question of jurisdiction has ever been raised and passed upon by the courts of this country or England. At least neither my own examination nor the industry of counsel has discovered any direct authority bearing upon the question. Upon general principles, however, I am of opinion that admiralty has jurisdiction in a case of unlawful seizure of maritime property for taxes or duties. Kent says: 'The admiralty possesses authority to decree restitution of a ship unlawfully withheld by a wrong-doer from the real owner. In cases of illegal captures, and of bottomry, salvage, and marine torts, the admiralty courts in this country inquire into and decide on the rights and titles involved in the controversy." 1 Kent. Comm. 371. And the student of this branch of the law well knows that the tendency has been to enlarge the sphere of admiralty jurisdiction rather than to restrict it since Chancellor Kent's time. Admiralty has jurisdiction of all torts upon and injuries to maritime property committed on navigable waters, when actions of trespass on the case would lie if committed upon land on other classes of property. Philadelphia, W. & B. R. Co. v. Philadelphia & H. G. Steam Towboat Co., 23 How. [64 U. S.] 209; Waring v. Clark, 5 How. [46 U. S.] 441–464. So, too, Mr. Justice Story enumerates the following classes of cases as unquestionably falling within the

jurisdiction of the admiralty courts, viz.: "Assaults and other personal injuries; cases of collisions, or running of ships against each other; cases of spoliation and damage (as they are technically called), such as illegal seizures, or depredations upon property; cases of illegal dispossession, or withholding possession from the owners of ships, commonly called possessory suits; cases of seizures under municipal authority for supposed breaches of revenue or other prohibitory laws; and cases of salvage." 3 Story, Const. 530, § 1663. [Conk. Adm. 21.] [2] In the case of The Tilton [Case No. 14,054], it was said by the same learned authority, that suits in admiralty, touching property in ships, are either petitory suits, in which the mere title to the property is litigated and sought to be enforced, or they are possessory suits, to restore the owner to the possession. The same point was held by the same learned judge in De Lorio v. Boit, [1d. 3,776]. And it is a fundamental principle that admiralty has jurisdiction of petitory and possessory actions to recover ships when replevin would lie at common law. Ben. Adm. 164 & 275.

Concluding, then, that this is a proper case for admiralty jurisdiction, the question is, does the case made entitle the libellants to the relief prayed, or to any relief in the premises? The first point made by the libellants is, that the tax in question is a "duty of tonnage" laid specifically upon this vessel by the city of Chicago, and as such void, ·because not laid with the assent of congress.

What is the "duty of. tonnage" meant to be prohibited by the constitution of the United States? It is a well known historical fact that nearly all European states and divers free cities and ports were in the habit of levying a tax upon all vessels entering their ports, in proportion to their tonnage. And this was what was known to the maritime and commercial world at the time of the adoption of the constitution as tonnage-tax, or duty of tonnage. The intention of the framers of the constitution was not only to make commerce free between the states, but to prohibit the states from in any manner, of their own will or caprice, interfering with foreign commerce. A tonnage-tax is defined to be "a duty levied on a vessel according to the ·tonnage or capacity, without reference to where her owner resides. It is a tax upon the boat as an instrument of navigation, and not a tax upon the property of a citizen of the state." The duty of tonnage which the constitution of the United States prohibited the states from levying is any duty or tax on a ship, as such, without regard to the residence of her owner, whether it be a fixed sum upon its whole tonnage or a sum to be ascertained by comparing the amount of tonnage with the rate of duty, when a ship, as an instrument of commerce, is required to pay a duty as a condition to her being al-

lowed to enter or depart from a port, or load or unload a cargo, either upon her tonnage, her property, or as a license to her officers or crew. Gibbons v. Ogden, 9 Wheat. [22 U. S.] 1; Passenger Cases, 7 How. [48 U. S.] 283, 459; Steamship Co. v. Port Wardens, 6 Wall. [73 U. S.] 31; State Tonnage Tax Cases, 12 Wall. [79 U. S.] 204, 212. This tax does not purport to be levied upon this vessel according to her tonnage, but according to her valuation as property. It is a tax upon this ship as part of the taxable property of the city of Chicago, she being owned and registered here. This tax is not, like a tonnage-tax, imposed upon the ship as such for the privilege of trading or taking shelter in this port, but treats the ship as property subject to a tax in this city.

· The question of the liability of property in boats and vessels to be taxed by the state authorities, on valuation, as other property of the state is taxed, has been frequently discussed by the supreme court of the United States, and the power uniformly conceded.

In the Passenger Cases, 7 How. [48 U. S.] 402, the court said: "A state cannot regulate foreign commerce, but it may do many things which more or less affect it. It may tax a ship or other vessel used in commerce, the same as other property owned by its citizens." So in the State Tonnage Cases, 12 Wall. [79 U. S.] 212, the court said: "But ships and vessels owned by individuals, and belonging to the commercial marine, are regarded as the private property of their owners, and not as the instruments or means of the federal government, and as such, when viewed as property, they are plainly within the taxing power of the states, as they are not withdrawn from the operation of that ·power by any express or implied prohibition contained in the federal ·constitution. Argument, therefore, to show that they may be taxed as other property belonging to the citizens of the state is hardly necessary, as the opposite theory is indefensible in principle, contrary to· the generally received opinion, and is wholly unsupported by any judicial determination. Direct adjudication to support that proposition is not to be found in the reported decisions of this court, but there are several cases which concede that such a tax, if levied by a state, would be legal, and no doubt is entertained that the concession is properly made.

"Taxes levied by a state upon ships and vessels owned by the citizens of the state, as property, based on a valuation of the same as property, are not within the prohibition of the constitution, but it is equally clear and undeniable that taxes levied by a state upon ships and vessels as instruments of commerce and navigation are within that clause of the instrument which prohibits the states from levying any duty of tonnage without the consent of congress; and it makes no difference whether the ships or vessels taxed belong to the citizens of the

[2] [From 8 Chi. Leg. News, 121.]

state which levies the tax or the citizens of another state, as the prohibition is general, withdrawing altogether from the states the power to lay any duty of tonnage under any circumstances, without the consent of congress.

"Annual taxes upon property in ships and vessels are continually laid, and their validity was never doubted or called in question, but if the states, without the consent of congress, tax ships or vessels as instruments of commerce, by a tonnage duty, or indirectly, by imposing the tax upon the master or crew, they assume a jurisdiction which they do not possess, as every such act falls directly within the prohibition of the constitution.

"Prior to the adoption of the constitution the states attempted to regulate commerce, and they also levied duties on imports and exports, and duties of tonnage, and it was the embarrassment growing out of such regulations and conflicting obligations which mainly led to the abandonment of the confederation and to the more perfect union under the present constitution."

In the light of these authorities I therefore conclude that this tax is not a "duty of tonnage."

I come now for a moment to consider the second objection to this seizure, on the ground that this assessment and warrant are against the ship and not against the owner, and for that reason void. It was conceded on the hearing that ships and vessels are personal property, and such all the authorities define them to be. The law in this state in force at the time this assessment was made required the owners of all personal property to return each year to the assessor a schedule or list of all their personal property subject to taxation, by a certain day, to be fixed by the assessor, and it was the duty of the assessor to fix the fair cash value thereof. Rev. St. Ill. 1874, c. 120, § 24; Id. c. 24, §§ 249, 251-253. The twenty-fifth section of chapter 120 prescribed the form of the schedule, and required, among other things, that it should distinctly set forth in the seventeenth item "every steamboat, sailing vessel, wharf-boat, barge, or other water-craft," etc. And by the thirteenth section of the same chapter it was provided that "all persons, companies, and corporations in this state, owning steamboats, sailing vessels, wharf-boats, barges, and other sailing craft, shall be required to list the same for assessment and taxation in the county, town, city, village, or district in which the same may belong or be enrolled, registered, or licensed, or kept when not enrolled, registered, or licensed."

Here is a plain and palpable duty imposed by law upon the owner of vessel property. It was admitted on the hearing that, between the 1st of May and 1st of July, 1874, a notice was sent to, or served upon the owners of all vessels, as shown by the register of the port, requiring them to list their property as required by law. It is not contended that the interest of these libellants, or either of them, was scheduled in any list of taxable property returned by them or either of them to the assessor. In fact, it is admitted that the only tax assessed upon or against this property is the one now in question. Undoubtedly this vessel, being personal property, should be taxed against some owner. The general theory of our law does not allow of the assessment of the tax on personal property as an independent res or thing, as it may be assessed on real estate under certain circumstances, although there are some features of our later revenue laws which seem to point to the idea that the legislature intended, even in regard to some classes of personal property, like bank shares, capital stock, and vessel property, to tax the thing itself without regard to any personal liability of an owner. But, notwithstanding these incongruities, the general principle running through our law, as it now stands and stood at the time the tax was levied, required the owner of vessel property to list it as personal property for taxation where it was subject to taxation, either by virtue of his residence or the enrollment and registration of the property. It is not necessary that I should decide what would be the duty of the owner of a vessel residing at one place when his vessel is enrolled or registered in another tax district, as it is not claimed that these owners, or either of them, were taxed elsewhere for this vessel, and it is admitted that two of the owners, representing three-fourths of the property, resided in Chicago, and the vessel was registered or enrolled as owned by libellant, Jacob Johnson. Here it is admitted that the owners of this property made no returns of it to the assessor, and the assessor assessed it in the form and manner I have indicated. The assessment and warrant show the name of the vessel and the name of her registered owner, her valuation, and the tax; nor does it appear that Johnson or either of the other libellants made any return of other personal property. The position is, that this is a tax against the vessel, as such by her name—an assessment and warrant in rem, so to speak—instead of an assessment against her owners.

But I differ with the proctors for libellants as to the construction and effect to be given this assessment and warrant. True, the owners might have returned their interest in this vessel in their list of personal property, and if they had done so it should and would have gone into their personal property assessment; but they neglected to do this, and left the assessor to search out this property, fix its ownership, and assess its value as best he could. The assessor has made an assessment in which the name of the owner, the description of the property, and its valuation, all appear. What more is

requisite? and what else could the assessor have done under the circumstances? The warrant, like the assessment, shows the name of the owner, the description of the property, its value, and the amount of the tax. I know of no other legal requisites for a tax warrant; nor does it make any difference, in my estimation, that the description of the property is in the first column to the left hand, and the name of the owner in the second. It seems sufficient if these facts appear on the face of the paper.

This may have been, and, for aught that appears in this case, was, the only property for which Jacob Johnson was taxed in the year 1874. If his property was valued too high, or if he was taxed as sole owner of a piece of property when he was only part owner, the law provides a way in which he could by attending to it in apt time have had the assessment corrected; but it does not lie in his mouth, after neglecting his duty in regard to listing his property, and after allowing the time to pass within which the assessment, as made by the assessor, stood open for correction, to object to the assessment in these particulars; when it was his obvious duty to have made it right in the first instance or had it corrected in proper time.

The policy of our law is that all property shall bear its equal share of the burdens of the state and city government. A court of admiralty is essentially a court of equity, and unless the libellant shows that some plain legal or equitable right has been violated, or is in danger of being violated, relief will not be given in this court. This vessel was subject to taxation by the city of Chicago. She was registered in the name of Jacob Johnson, who was a resident of this city. He must, for the purposes of taxation, be presumed to be the sole owner. It is possible that if Johnson had, while the assessment was subject to correction, appeared before the proper tribunal and shown that he was only half owner, and asked to have the assessment corrected in that particular, it might have been done. But he failed to do this, and there is enough, as I think, upon the face of the assessment and warrant and upon the admitted facts, to show that the tax was properly assessed.

It may be said that Peterson, one of the libellants, and owner of a quarter interest in the property, did not reside in the city of Chicago, but resided at Lake View, and, therefore, his interest could only be taxed where he resided. My answer to that is, that Johnson appeared to be the sole owner of record, and officers charged with the assessment and collection of taxes are not required to look into the secret ownership of personal property. They do their duty when they assess the property against the apparent owners, as shown by possession or muniment of title. Take, for instance, a large wholesale or manufacturing firm in this city. There may be silent partners residing else-where, who have an interest in the goods, but the property is here, the firm, as a business entity, is here, and this, therefore, should be, and under the law is, the place of taxation.

I come, then, to the conclusion that the tax complained of in this case is not a "duty of tonnage," and that the warrant under which this vessel is seized and held is so far good as to amount to a justification in this court of the seizure complained of. I do not say that it would be a justification in a court of law, for that question is not before me; but a court of admiralty, like a court of equity, looks into the substantial merits of the controversy, and I find this property subject to assessment in the city, that it was in form so assessed, and a warrant issued to the collector for the collection of the tax, and no reason is shown or made to appear why the tax should not be paid. If the property is taxed in the name of one owner instead of three, it is owing to the negligence of those owners in not returning their schedules, or calling for a correction of the books after the assessment was made. The libel will, therefore, be dismissed with costs.