THE STATE v. ABRAHAM POST.

1. The right to plant oysters on the lands of the state for the sole use of the occupant is a privilege, and inasmuch as it excludes all others from taking them, it is an exclusive privilege, which paragraph 11, section 7, of our state constitution forbids the legislature to grant by private, special or local laws.

2. The act of April 28th, 1890 (*Pamph. L., p.* 280), is in conflict with the constitution. It does not confer its benefits upon all the citizens of the state who may thereafter elect to accept them upon the terms prescribed by the lawmaker. It can never apply to any persons other than those to whom it applied at the time of its enactment, and does not embrace all of a class according to a legal basis of classification.

3. The indictment is infirm in failing to allege that the grounds from which the defendant is alleged to have taken the oysters were grounds used or occupied by a citizen of this state.

---

Argued at June Term, 1892, before Justices VAN SYCKEL, MAGIE and GARRISON.

For the state, *Charles H. Ivins.*

For the defendant, *Alfred Walling, Jr.*

The opinion of the court was delivered by

VAN SYCKEL, J.    The defendant moves to quash an indictment found against him in October, 1891, by the grand jury of Monmouth county, for violating a supplement to the act for the preservation of clams and oysters, passed April 28th, 1890. *Pamph. L., p.* 280.

The constitutionality of this supplement is denied on the ground that it violates paragraph 11, section 7, of our state constitution, which provides that "the legislature shall not pass private, local or special laws granting to any corporation, association or individual any exclusive privilege, immunity or franchise whatever."

The act of 1890 provides that "any person or persons, citizens of this state, now using or occupying any grounds lying under the tide waters of this state, for the planting or cultivation of oysters thereon, said grounds not being natural clam grounds or natural oyster seed beds, and the same shall have been so used and occupied since January first, one thousand eight hundred and eighty, shall be confirmed in their right to use such grounds for the purpose of planting and cultivating oysters, and the oysters planted and grown thereon shall be the personal property of the person or persons using or occupying the grounds aforesaid ; *provided*, the said grounds shall have been marked by proper stakes, buoys or suitable monuments during the time aforesaid, and oysters shall have been actually planted upon the grounds so marked."

The act makes it a misdemeanor to take oysters from beds so used and marked, without the permission of said occupant.

The title to the bed of navigable streams being absolute in the state, it was competent for the legislature, prior to the recent amendments to the constitution, to grant the state's lands to any one upon such terms as it deemed expedient. *Paul* v. *Hazleton*, 8 *Vroom* 106 ; *Wooley* v. *Campbell, Id.* 163.

The right to plant oysters on the lands of the state for the sole use of the occupant, is a privilege, and, inasmuch as it excludes all others from taking them, it is an exclusive privilege which cannot be granted by special, local or private laws.

Prior to the adoption of the amendments to the constitution, there had been conspicuous instances in which the legislature had made valuable grants to individuals and corporations by special laws.

The purpose of the constitutional clause under consideration was to interdict all legislation of that character. If,

therefore, the act of 1890 is private, local or special, it is in conflict with the fundamental law.

The expressed purpose of the act is to encourage and protect the planting and cultivation of oysters. If the legislature conceives that public policy requires the appropriation of the state's lands under water, or any part of them, to this object, it may enact such laws as will effectuate it, provided it can be accomplished by general laws.

The state may grant rights in some of its lands without disposing of all its possessions, but it cannot select individuals or corporations as the objects of its bounty, to the exclusion of other citizens of the state.

This act does not confer its benefits upon all the citizens of the state who may elect to accept them upon the terms prescribed by the lawmaker. It does not shield the property of all who now or hereafter occupy and plant, but is expressly restricted in its operation to those who have used and occupied from January 1st, 1880, and who were in occupancy at the passage of the act in 1890. The law can never apply to any persons other than those to whom it applied at the time of its enactment. Occupancy, planting and staking the ground constitute the meritorious ground for the grant, and are the basis of the classification upon which a law, to be valid, must be framed. The legislature, in order to increase the product of oysters, may declare that all who may now or hereafter elect to plant and mark oyster ground shall be protected in the enjoyment of such property, but it cannot limit immunity to those who had planted and staked the grounds at the passage of the act of 1890. That is the vice of this law; it does not embrace all of the class according to a legal basis of classification. The adjudicated cases condemn it. *State* v. *Hammer*, 13 *Vroom* 435 ; *Stahl* v. *Trenton*, 25 *Vroom* 444, 478 ; *Bennett* v. *Trenton, ante*, p. 72 ; *State* v. *O'Connor*, 25 *Vroom* 36.

In the case last cited it was held that an act limited to those members of a designated body holding office at the time of the passage of the act, was special and void because it

failed to include within its provisions all the members which constitute the selected group or class.

There is also a fatal infirmity in the frame of the indictment. It fails to allege that the grounds from which the defendant is charged with having taken oysters were grounds used or occupied by a citizen of this state.

The offence being purely statutory, and the statute having made the citizenship of the occupant an essential ingredient of the offence, the indictment is defective in failing to show that the defendant has been guilty of any infraction of the law.

The indictment should be quashed.