THE STATE, JAMES H. ALEXANDER, ROBERT M. MOORE AND LEBBEUS B. MILLER, PROSECUTORS, v. THE CITY OF ELIZABETH AND THE NEW JERSEY JOCKEY CLUB, DEFENDANTS.

1. The act of the legislature of this state entitled "An act concerning the maintaining of race-courses in this state and to provide for the licensing and regulating of the same," passed February 27th, 1893 (*Pamph. L., p.* 28), is a special law, regulating the internal affairs of towns and counties and also a special law granting to corporations, associations or individuals exclusive privileges, immunities or franchises, and is therefore unconstitutional and void.

2. Municipal government is a creation of the statute, and the powers of municipal government may extend to almost every feature of regulation not inhibited by the constitution, within the area over which it extends. Such powers then become matters regulating the internal affairs of such municipal governments.

3. This statute affords no proper and appropriate classification of race-courses between those in use prior to January 1st, 1893, and those set up after that date, as will support the application to each of a system of legislation so distinctive and different as the two methods of licensing provided for by this act.

On *certiorari.*

Argued at June Term, 1893, before Justices DEPUE, LIP-PINCOTT and ABBETT.

For the prosecutors, *Richard V. Lindabury, John R. Emery* and *Joseph Cross.*

For the defendants, *Allan L. McDermott, Samuel Kalisch, Chauncy H. Beasley* and *James A. Connelly.*

The opinion of the court was delivered by

LIPPINCOTT, J.   This writ brings into this court for review and adjudication certain resolutions of the city council of the city of Elizabeth, passed at a meeting of the city council on April 1st, 1893, purporting to grant a license, or to be a license, to or for the New Jersey Jockey Club, to maintain a race-course in said city, for running, racing, trotting or pacing of horses, mares or geldings, for a purse, plate, stake or other thing.

On that day the New Jersey Jockey Club presented a petition to the city council of the city of Elizabeth, requesting that a license be granted to them under and by virtue of the provisions of *Pamph. L.* 1893, *ch.* XVI., to maintain a race-course for the racing, running, trotting or pacing of horses, mares or geldings for a purse, plate or other thing to be run, paced or trotted for by such horses, mares or geldings, on their grounds in the city of Elizabeth, as named in said act.

Upon the presentation of this petition, the city council adopted the following resolution :

"*Resolved,* That the New Jersey Jockey Club is hereby licensed for a period of five years to maintain and use a race-

course in this city for the running, racing, trotting or pacing of horses, mares or geldings for a purse, plate, stake or other thing, the said race-course being the one used by the New Jersey Jockey Club for such running, trotting or pacing prior to the first day of January, eighteen hundred and ninety-three."

In addition to this resolution, there were some other resolutions adopted at such meeting, imposing conditions as to the management of such race-course and requiring the payment to the city of Elizabeth of the sum of $5,000 for the privilege granted under and by virtue of the license, and also limiting the time in each year of racing on such race-course to a period of thirty days in the fall and thirty days in the spring of each year during the continuance of the license.

The adoption by the city council of these resolutions is attempted to be justified by the defendants under the provisions of an act of the legislature of this state entitled "An act concerning the maintaining of race-courses in this state and to provide for the licensing and regulating of the same," passed February 27th, 1893. *Pamph. L., p.* 28.

By the first section of this act it is provided "that the board of chosen freeholders of any county in this state, or the board of aldermen, common council, township committee or other body having general charge of the affairs of any city, township or municipal division of this state in which there is situated and maintained a race-course for the racing, running, trotting or pacing of horses, mares or geldings for a purse, plate or other thing to be run, paced or trotted for by such horses, mares or geldings, shall have power and is hereby authorized to license the owners of such race-courses to maintain and use the same for any running, pacing or trotting of any horses, mares or geldings for any purse or stake, plate or other thing; such license shall be for a period of not more than five years, and no license shall be granted for the maintenance or use of a race-course within the corporate limits of any city having a population of more than one hundred thousand people, according to the census last taken."

By the third section it is provided "that it shall be unlawful for any person or incorporated body or association to maintain or use a race-course in this state for the racing, running, trotting or pacing of horses, mares or geldings for a purse, plate or other thing, or to permit such running, racing, trotting or pacing upon any grounds owned or leased or controlled by such person or incorporated body or association unless license for that purpose shall have been granted as in this act provided. Any license granted under this act shall become void upon any breach of any condition upon which it shall be granted."

By the fourth section it is provided "that it shall not be lawful for any person or incorporated body or association to maintain or use in this state, for the running, trotting or pacing of horses, mares or geldings for a purse, plate or other thing to be run, paced or trotted for by such horses, mares or geldings, any race-course which was not used for such running, trotting or pacing prior to the first day of January, one thousand eight hundred and ninety-three, unless such person or incorporated body or association shall first file with the secretary of state a certified copy of a resolution adopted by three-fourths of the members of the board of chosen freeholders of the county in which such race-course is proposed to be maintained, which resolution shall declare that the maintaining of such race-course is a public necessity."

The question whether this act is one which regulates the internal affairs of towns and counties has been extensively discussed in the arguments and briefs of counsel in this cause, and it has been seriously contended by the defendants that this act is not within the meaning of the language of article 4, section 7, paragraph 2, of the constitution of this state, referring to laws "regulating internal affairs of towns and counties."

It will be perceived by the first section of this act, power to license is conferred upon the boards of chosen freeholders or the board of aldermen, common council, township committee or other body having general charge of the affairs of

any city, township or municipal division of this state in which there is situated and maintained a race-course of the character named in this section ; and it also provides that no license shall be granted for the maintaining or use of a race-course within the corporate limits of any city having a population of one hundred thousand people, according to the census last taken.

The second section provides that these licenses shall be granted only upon certain expressed conditions, and the third section provides that it shall be unlawful for any person or incorporated body or association to maintain or use a race-course of the character named in the act, unless the license for that purpose shall have been granted as in the act provided, and that any license granted under this act shall become void upon the breach of any condition upon which it shall be granted.

This act undoubtedly confers power upon the municipalities named in the first and fourth sections, in a direction in which it has not been heretofore exercised.   It may be that, primarily, racing within this state is not a question which concerns the internal affairs of towns or counties, but it cannot be well contended that a statute which confers power upon these municipalities to restrict, limit or extend racing is a statute which does not demonstrably affect the internal affairs of such municipalities within the meaning of the express inhibition of the constitution forbidding the enactment of a certain character of statutes regulating such affairs.   The statute, on its face and by its express conditions, renders racing of a certain character unlawful unless the powers conferred on these municipalities are exercised to permit it.   The third section of the act expressly declares that racing of the character mentioned in the act shall be unlawful unless it be legalized by a license which can only be granted by the governing body having general charge of the affairs of such municipalities, and certainly the statute, in this respect, is dealing with a question of municipal government, and whether it be one of police, revenue or some other power of municipal govern-

ment is quite immaterial.   Municipal government is a crea-
tion of statute, and the powers of municipal government may
extend to almost every feature of regulation not inhibited by
the constitution within the area over which it extends.   It
becomes a matter of the internal regulation of the affairs of
the municipality by force of the statute, and it cannot be
claimed, so far as the statute is concerned, to be a question,
any longer, of state policy, but a matter relating to the inter-
nal affairs of the municipality to which it applies.   It becomes
the power of the municipality.   If the general subject-matter
here, as contained in this statute, be one over which the legis-
lature has power and jurisdiction, then it cannot be contended,
when its power is conferred upon any municipality, aside
from the question of whether the statute be invalid or not,
that such matter does not become the internal affair of such
municipality.

It may be superfluous to pursue this subject further, but,
on decided authority, there can exist no question but that this
statute is one regulating the internal affairs of towns and
counties.

In *Bingham* v. *Camden*, 11 *Vroom* 156, in this court,
Justice Reed says: "The establishment of a municipality,
whether by custom, royal charter or legislative grant, carries
with it certain incidental powers essential to its existence as a
body politic.   In addition to these incidental powers, others
are granted or the incidental powers regulated by express
provision in their respective charters.   All these matters
which are the subject of control by the municipality incident-
ally, or which already exist or may thereafter be conferred by
grant, concern the internal affairs of the city.

"Any attempt to strip a city of any such power or to
confer upon it additional power, or to change the manner of
exercising the power already existing, is a regulation of such
internal affairs.

" The largest field for the municipal action is afforded in
the exercise of the power to suppress nuisances, prevent dis-
orders, preserve the health and safety of the citizens by virtue

of its right to invoke and administer the police power of the state. The control of the vending of spirituous liquors has been the subject of such regulation almost from the beginning of government."

The cases of *Satterly* v. *Camden Common Pleas,* 12 *Vroom* 495; *Tiger* v. *Court of Common Pleas,* 13 *Id.* 631; *Hightstown* v. *Glenn,* 18 *Id.* 105, 108; *Paul* v. *Gloucester,* 21 *Id.* 585, 609; *Pell* v. *Newark,* 11 *Id.* 550; *Richards* v. *Hammer,* 13 *Id.* 435; *S. C.,* 15 *Id.* 667, all illustrate and enlarge this principle.

Here, under this statute, the machinery provided to accomplish the purposes of this act is municipal; the board which exercises the power conferred by the act is a municipal board; the revenues derived by the resolutions of the city council of Elizabeth, resulting from the granting of this license, go into the city treasury.

And within the authority of the adjudicated cases in this state, this statute regulates the internal affairs of towns and counties by conferring upon them powers which, before this time, they did not possess, and placing within their control and regulation matters over which, previously, they exercised no control. These matters are such as affect the public welfare. Practices affecting the public are made lawful or unlawful by the exercise or non-exercise of a power conferred upon the municipal governing bodies. This power then becomes a part of the municipal government.

This statute is one which, so far as this case is concerned, clearly regulates the internal affairs of the city of Elizabeth.

The contention here, then, on the part of the prosecutors, is that this statute is unconstitutional in that it is a local or special law contrary to article 4, section 7, paragraph 2, of the amended constitution of this state, which provides that the legislature shall not pass private, local or special laws in any of the following enumerated cases: * * * regulating the internal affairs of towns and counties; * * * granting to any corporation, association or individual any exclusive privileges, immunity or franchise whatever.

I think it requires but a cursory examination of this statute to conclude, beyond question, that it is affected by both these vices, and is, upon these grounds, unconstitutional and therefore invalid.

There was much discussion upon the question whether the act was not invalid upon the ground that, by the first section thereof, it could have no operation in cities having a population of more than one hundred thousand people, according to the census last taken.

This objection to this statute is not here either discussed or determined.

By the first section of the act, power is conferred upon the governing body of any county, city, township or other municipal division of this state in which there was situated and maintained a race-course of the sort therein named, to grant a license to the owner of such race-course to use and maintain such race-course for any running, &c., in the manner therein characterized ; but this power to thus license is, by the fourth section of the act, restricted to race-courses used for such purposes prior to the 1st day of January, 1893.   This fourth section prohibits any person or incorporated body or association maintaining or using any race-course for the running, trotting or pacing of horses, mares or geldings for a purse, plate or other thing to be run, paced or trotted for by such horses, mares or geldings, which was not used for such purposes prior to January 1st, 1893, unless such person or incorporated body or association shall obtain a resolution adopted by three-fourths of the members of the board of freeholders of the county in which such race-course is proposed to be maintained, which resolution shall declare the maintaining of such race-course is a public necessity, a certified copy of which resolution shall be filed with the secretary of state.

It will be seen that a discrimination is at once made by this act in favor of localities and race-courses therein situated, maintained and used prior to the 1st day of January, 1893, and against race-courses to be maintained and used after that time.   In the former, and with respect to race-courses therein,

licenses may be granted by the governing bodies of the muni-cipalities named in the first section of the act, without quali-fication or restriction, but with respect to the latter, *i. e.*, race-courses to be maintained and used after the 1st of January, 1893, a condition is imposed, that is, a resolution must be adopted by three-fourths of the chosen freeholders of the county, which shall declare the race-course a public necessity.

Besides the requirement that a race-course proposed to be maintained and used after the 1st day of January, 1893, shall be licensed by a three-fourths vote of the board of chosen freeholders of the county, there is added the exceedingly oner-ous condition of a declaration on the part of the board of chosen freeholders that the race-course proposed to be main-tained is a public necessity.

In passing upon the constitutionality of such discriminative restrictive acts and the classifications thereby created, the sub-stance of the legislative provision is regarded, giving only secondary consideration to the form in which it is expressed; and while, under the clause of the constitution just cited, objects may be classified for the purposes of legislation, such classification must be founded upon some natural or substan-tial difference, and such classification must include all the objects to which the legislation enacted for the particular class is appropriate or necessary.    *Rutgers* v. *New Brunswick,* 13 *Vroom* 51.

The rule of law applicable is stated in the language of the Chief Justice in *Van Riper* v. *Parsons,* 11 *Vroom* 1, as fol-lows : " Within the sense of these prohibitory clauses of the constitution, a general law as contra-distinguished from one special or local, is a law that embraces a class of subjects or places, and does not omit any subject or place naturally belonging to such class.    *    *    *    Interdicted local and special laws are those that rest on a false or deficient classifi-cation ; their vice is that they do not embrace all the class to which they are naturally related; they create preference, establish inequalities ; they apply to persons, things or places possessed of certain qualities or situations, and they exclude

from their effect other persons, things or places which are not dissimilar in these respects."

In *Richards* v. *Hammer*, 13 *Vroom* 440, the Chief Justice again says: "The true principle requires something more than a mere designation by such characteristics as will serve to classify, for the characteristics which thus serve as the basis of a classification must be of such a nature as to mark the objects so designated as peculiarly requiring exclusive legislation. There must be a substantial distinction, having a reference to the subject-matter of the proposed legislation, between the objects or places embraced in such legislation and the objects or places excluded."

And in the same case, in the Court of Errors and Appeals, 15 *Vroom* 667, the Chancellor declares that: "Normally, there can be, under our constitution, no such thing as local or special legislation to regulate the internal affairs of municipalities, but all legislation to that end must be general and applicable alike to all; nor can any departure from the rule be justified except when, by reason of the existence of a substantial difference between municipalities, a general law would be inappropriate to some, while it would be appropriate and desirable for others. Then it would be warranted not only by the necessities of the situation, but by a reasonable construction of the constitutional provision. In such a case, the municipalities in which the peculiarity exists would constitute a class, and the legislation in fact would be general, because it would apply to all to which it would be appropriate. But distinctions which do not arise from substantial differences—differences so marked as to call for separate legislation—constitute no ground for supporting such legislation." *Long Branch* v. *Sloane*, 22 *Vroom* 356 ; *Van Giesen* v. *Bloomfield*, 18 *Id.* 442 ; *Township of Lodi* v. *State*, 22 *Id.* 402.

These rules have been continuously declared by the courts ever since the adoption of our amended constitution.

In the latest case on the subject, in State *v.* Somers Point, Mr. Justice Depue says: "As applied to legislation of this character, a law is special or local, as contra-distinguished

from general, in the sense of the prohibitory clause in this paragraph of the constitution, which embraces less than the entire class of persons or places to whose condition such legislation would be necessary or appropriate, having regard to the purpose for which such legislation is designed. A law which so particularizes, and by such means is restricted in its operation to persons or places, which do not comprise all the objects which naturally belong to the class, is special or local within the meaning of the constitutional interdict."

It has been inquired, upon what principle can a classification of race-courses into those used and maintained before and those used and maintained after January 1st, 1893, be sustained? What, in this view, is the substantial difference between them which requires a different system of legislation applicable to each? Where are the characteristics sufficiently marked and important to make them distinct classes? I can perceive no such differences and no such characteristics; nor can I perceive any reasonable ground on which one class should require any different legislation from that which the other requires.

To make a classification good it must be founded upon differences and characteristics sufficiently marked and important to make them naturally a class by themselves. *Van Riper* v. *Parsons*, 11 *Vroom* 123; *Anderson* v. *City of Trenton*, 13 *Id.* 486; *Tyler* v. *Plainfield*, 25 *Id.* 529.

There are no qualities in race-courses which are sufficiently marked and important to distinguish those in use prior to January 1st, 1893, from those set up after that date.

Legitimate classification rests on the quality of its members, not on the particular time when those qualities were acquired. *Pavonia Horse Railroad Co.* v. *Jersey City*, 16 *Vroom* 297; *Pierson* v. *O'Connor*, 25 *Id.* 36; *Stahl* v. *Trenton, Id.* 444.

This statute affords no proper and appropriate classification of race-courses which will support the application of a distinctive system of legislation applicable to each class, so distinctive and different as the two methods of licensing appear-

ing in this act. The act is simply special legislation of the most palpable character and plainly within the interdicting provision of the constitution against special laws regulating the internal affairs of towns and counties, and it must, upon this ground alone, be declared unconstitutional and invalid.

But there is still another obvious defect in this statute. It is not alone special in its character, but it also distinctly and substantively grants to certain corporations, associations or individuals exclusive privileges, immunities or franchises. It is clear that this act is a grant of an exclusive privilege to race-courses used before January 1st, 1893, to obtain a license without complying with the onerous conditions embraced in the fourth section of the act. Under the provisions of this latter section, the board of chosen freeholders, supposably exercising only public functions for the public welfare, before they could exercise the power conferred upon them of granting a license to a race-course, must declare, in any event, upon their judgment in behalf of the public, that the race-course is a " public necessity." Now, it is manifest that this provision of the statute operates to create such· a classification as not to confer upon all race-courses alike the benefit which inures from the exercise of the powers under the first section of this act. The act creates and confers privileges upon one class of race-courses and grants to certain corporations, associations and individuals privileges and immunities which can be rarely, if ever, conferred upon others under its provisions. The conditions imposed are not even similar. One class of race-courses may be established without regard to conditions at all; another class can only be established by submitting to the imposition of a condition which may be either of difficult or impossible performance.

One class is privileged to the point, almost, of monopoly, and the other class is discriminated against almost to the point of absolute prohibition, and this is a vice of statutory enactment declared against and plainly interdicted by the provisions of the constitution against the passage of local or spe-

cial laws granting to any corporation, association or individual any exclusive privilege, immunity or franchise.

In the case of *State* v. *O'Connor*, 25 *Vroom* 31, where the act under review provided that "no person now holding an appointive position in any city or county of this state and receiving a salary from such city or county, who is an honorably-discharged Union soldier, &c., shall be removed from such position except for cause," Mr. Justice Knapp, speaking for this court, said : " This law is hopelessly void, because only those members of the designated body of men who held office at the time of the passage of the act are given the benefit of its provisions.   The great body of this deserving class of our citizens is shut out from its benefits."

So far as adjudicated authority can go, it would appear that an analogous point to the very one in this case under consideration has been settled in this court, in the case of *State* v. *Post*, 26 *Vroom* 264 ; and that case is so important in this relation that it may not be amiss to draw at length from it.   In that case the act considered read as follows : "Any person or persons, citizens of this state, now using or occupying any grounds lying under the tide-waters of this state for the planting or cultivation of oysters thereon, said grounds not being natural clam-grounds or natural oyster seed beds, and the same shall have been so used and occupied since January the first, one thousand eight hundred and eighty, shall be confirmed in their right to use such grounds for the purpose of planting and cultivating oysters, and the oysters planted and grown thereon shall be the personal property of the person or persons using or occupying the grounds aforesaid, provided the said grounds shall have been marked by proper stakes, buoys or suitable monuments during the time aforesaid and oysters shall have been actually planted upon the grounds so marked."

This act made it a misdemeanor to take oysters from beds so used and marked without the permission of the occupant.

Mr. Justice Van Syckel says : " The right to plant oysters on the lands of the state for the sole use of the occupant, is a

privilege, and inasmuch as it [the act] excludes all others from taking them, it is an exclusive privilege which cannot be granted by special, local or private laws.  *  *  *  The state may grant rights in some of its lands without disposing of all its possessions, but it cannot select individuals or corporations as the objects of its bounty, to the exclusion of other citizens of the state."

In the opinion, establishing a principle which seems to be thoroughly applicable to the present case, Mr. Justice Van Syckel continues : " This act does not confer its benefits upon all the citizens of the state who may elect to accept them upon the terms prescribed by the lawmaker ; it does not shield the property of all who now or hereafter may occupy and plant, but is expressly restricted in its operation to those who have used and occupied from January 1st, 1880, and who were in occupancy on the passage of the act in 1890.   The law can never apply to any person other than those to whom it applied at the time of its enactment ; occupancy, claiming and staking grounds constitute the meritorious ground for the grant, and is the basis of the classification upon which a law, to be valid, must be formed.   The legislature, in order to increase the product of oysters, may declare that all who shall now or hereafter elect to plant and make oyster-grounds shall be protected in the enjoyment of such property, but it cannot limit immunity to those who had planted and staked the ground at the passage of the act in 1890.   That is the vice of this law ; it does not embrace all of the class according to a legal basis of classification, and the adjudicated cases condemn it."

The court has not considered the other objections urged against the validity of this act.

Both upon the ground that it is a special law regulating the internal affairs of towns and counties, and also upon the ground that it is a special law granting to certain corporations, associations and individuals exclusive privileges, immunities or franchises, it is held to be unconstitutional and invalid.

Therefore, the resolutions of the city council of the city of Elizabeth in this matter, and the license therein and thereby granted, are set aside and declared to be null and void.

Justices DEPUE and ABBETT concur.