THE STATE v. ISAAC CORSON, JR.

Submitted March 21, 1901—Decided November 11, 1901.

1. The regulation by a state of the taking, planting and cultivation of oysters in its tidal waters is not a regulation of commerce between the states.
2. The imposition of a license fee upon boats engaged in the business of catching, planting and growing oysters in such waters, graduated upon the tonnage of such boats, is not the laying of a duty of tonnage within the meaning of the federal constitution.

3. A statute which denies to persons, who are not citizens of the state, the privilege of taking a lease of the state's lands under water for the purpose of raising oysters thereon, does not violate those provisions of the federal constitution which guarantee equal civil rights and privileges to all citizens of the United States.

4. An unconstitutional provision in a statute does not necessarily render the whole act void. Where there is no reason to suppose that the objectionable feature constituted an essential motive to the enactment of the law, and it may be eliminated from the act without impairing the residue, only the invalid provision will be declared void.

5. An act entitled "An act for the better regulation and control of the taking, planting and cultivating of oysters on lands lying under tidal waters of the Delaware bay and Maurice river cove, in the State of New Jersey," expresses, in that title, not only those regulations which are contained in the body of the act, but also the punishments which are provided therein for violations of such regulations.

6. A statute is not special or local merely because it authorizes or prohibits the doing of a thing in a certain locality. It is, notwithstanding this fact, a general law if it applies to all the citizens of the state, and deals with a matter of general concern.

On *certiorari.* On motion to quash indictment.

The legislature of this state, on March 24th, 1899, passed an act entitled "An act for the better regulation and control of the taking, planting and cultivating of oysters on lands lying under tidal waters of the Delaware bay and Maurice river cove, in the State of New Jersey." *Pamph. L., p.* 506.

This act, as its title suggests, creates a complete scheme for the planting, cultivating and taking of oysters on the lands of the state lying under the tidal waters mentioned. The first section provides for the creation of a "state oyster commission," which shall have the exclusive regulation and control of all the oyster grounds of the state lying under those waters. Sections 2 and 3 empower the commission to appoint an "oyster superintendent" and to employ surveyors and guards to enforce all laws regulating the taking, planting or cultivating of oysters in the waters mentioned. Section 4 provides for the maintenance of an office and the holding of meetings by the commission. Section 5 authorizes the commission to lease to applicants any of these lands, for the purpose of tak-

ing, planting and cultivating oysters thereon; "provided, however, that no lease or leases shall be granted to any person who shall not be at the time of granting of said lease or leases, and shall not have been for twelve months next preceding, a citizen and actual resident of this state; provided, nevertheless, that any person not a citizen or resident of this state, already holding and using ground or grounds south of said southwest line in the Delaware bay and Maurice river cove and having oysters planted thereon under any usage, custom or existing law of this state, may apply for and receive a lease or leases for said ground or grounds so held at the time of the adoption of this act." Sections 6 and 7 fix the terms upon which the lands may be leased and give the first right to apply for and receive a lease to persons now having such lands staked up. Section 8 authorizes the commission to survey and map leased land. Section 9 excludes from the operation of the law all natural oyster beds lying under these waters. Section 10 authorizes the oyster superintendent to issue licenses to captains of boats entitled by law to engage in the business of catching, planting and growing oysters in these waters, upon their paying the license fixed therefor by the state oyster commission, and prohibits all boats from dredging for or catching oysters or carrying on the oyster business therein without first obtaining such license and paying the fee. It also authorizes the state oyster commission to fix the license fee at any sum not exceeding $2 per ton on the tonnage measurement of such boats. Section 11 requires the state oyster commission, before issuing any lease, to cause the person applying for the same to make oath that he is a citizen and actual resident of the state, and has been such for twelve months next preceding his application, or that, at the time of the adoption of the statute, he was holding or using, and has since continued to hold or use, for the purpose of taking, planting and cultivating oysters, the lands for which the application for a lease is made. It further requires that the oyster superintendent, before issuing a license for a boat, shall cause the master or captain to make oath that such boat is wholly owned by citizens and actual residents of this

state, who have been such for twelve months next preceding, or that, at the time of the adoption of the statute, the boat was duly licensed, under laws exising at that time, to carry on the business of catching, planting and growing oysters in Delaware bay and Maurice river cove. Sections 12, 13 and 14 relate to unexpired licenses and to the disposition of the revenue received under the act. Section 15 requires the oyster superintendent to keep an account of fees received by him and submit such accounts to the state comptroller, and, after they have been audited by that officer, to pay over the moneys shown thereby to the state treasurer. It also requires the payment by that officer of bills incurred by the state oyster commission. Sections 16 and 17 prohibit the taking of oysters from lands under these waters which are held by lease from the state oyster commission except during a designated period, and at any time from such lands as are not held by lease from the commission. Section 18 requires the return to the waters of all oyster shells and other materials, except oysters, which shall be taken up in the process of dredging. Section 19 empowers the state oyster commission to adopt ordinances to regulate the taking, catching and cultivating of oysters in these waters. Section 20 provides that "any person or persons who shall hereafter dredge upon or throw, take or cast his oyster dredge, or any other instrument used for the purpose of catching oysters, upon any oyster bed or ground duly marked, buoyed or staked up within the waters of this state, belonging to any other person, without the permission of the lessee or lessees thereof, shall be deemed guilty of a misdemeanor and of a violation of the provisions of this act." Section 21 authorizes the members of the state oyster commission, the oyster superintendent and the several captains or masters of guard boats to arrest, on view, without special warrant, any person engaged in violating the provisions of the act, or the provisions of any ordinance adopted by the state oyster commission. Section 22 provides for the revocation of licenses under certain conditions. Section 23 excludes from the privileges of the act any person or boat which, at the time of its passage, was prohibited, by the laws of this state then

in force, from engaging in the business which the act regulates and controls. Section 24 is a disclaimer of any intent to confirm or verify, by the act, the title of any person to any of these lands. Section 25 provides that "any person violating any of the provisions of the act, or any ordinances duly adopted by the state oyster commission, or the provisions of any other law of this state regulating the taking, planting or cultivating of oysters in the Delaware bay or Maurice river cove, in force and not repealed by this act, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by a fine not exceeding $1,000, or imprisonment in state prison not exceeding five years, or both." Section 26 repeals all inconsistent legislation.

The indictment brought up for review is found under the twentieth and twenty-fifth sections of the act, and charges the prosecutor with unlawfully dredging for oysters upon a certain oyster bed, duly staked out, marked and buoyed, within the waters of Delaware bay and Maurice river cove, and belonging to and in the possession of one Hager, under a lease made to him by the state oyster commission, without the permission of the lessee.

Before Justices GUMMERE and FORT.

For the motion, *Walter H. Bacon* and *David J. Pancoast.*

Contra, *James H. Fithian,* prosecutor of the pleas, and *William H. Logue.*

The opinion of the court was delivered by

GUMMERE, J. The only ground upon which this indictment is attacked is that the statute, under which it is found, is void, because in conflict with both the federal and the state constitutions. It is claimed by the prosecutor that it runs counter to the following provisions of the federal instrument, viz.: Article 1, section 8, "Congress shall have power * * * to regulate commerce * * * among the several states." Article 1, section 10, paragraph 3, "No state shall, without the consent

of congress, lay any duty of tonnage." Article 4, section 2, "The citizens of each state shall be entitled to all privileges and immunities of citizens in the several states." Article 14, section 1, "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, * * * or deny to any person, within its jurisdiction, the equal protection of the laws."

The provisions of our state constitution with which it is said to conflict are article 1, section 15, "Excessive fines shall not be imposed and cruel and unusual punishment shall not be inflicted." Article 4, section 1, paragraph 1, "The legislative power shall be vested in a senate and general assembly." Article 4, section 7, paragraph 4, "Every law shall embrace but one object, and that shall be expressed in the title." Article 4, section 7, paragraph 11, "The legislature shall not pass private, local or special laws * * * regulating the internal affairs of * * * counties, * * * or granting to any * * * individual any exclusive privilege, immunity or franchise whatever." Article 4, section 7, paragraph 12, "Property shall be assessed for taxes under general laws and by uniform rules."

The portions of the statute said to be repugnant to the provision of the federal constitution which vests congress with the power to regulate commerce among the states are sections 10 and 11.

The question presented by this contention, whether the regulation of the oyster business, as defined by the act—*i. e.,* the taking, planting and cultivating of oysters in the tidal waters of the state—is a regulation of commerce between the states, is not a novel one. In the case of *McCready* v. *Virginia,* 94 *U. S.* 391, it is declared by that court that each state owns the beds of all tide waters within its jurisdiction, unless they have been granted away; and that, in like manner, the states own the tide waters themselves and the fish in them; that the title thus held is subject to the paramount right of navigation, the regulation of which, in respect to foreign and interstate commerce, has been granted to the United States; but that there has been "no such grant of power over the fish-

eries; that these remain under the exclusive control of the state, which has, consequently, the right, in its discretion, to appropriate the tide waters and their beds to be used by its people as a common for taking and cultivating fish, so far as it may be done without obstructing navigation." In *Manchester* v. *Massachusetts,* 139 *Id.* 240, it is said, on page 258 of the opinion, that included within the territorial jurisdiction of a state "is the right of control over fisheries, whether the fish be migratory, free-swimming fish or free-moving fish, or fish attached to or embedded in the soil." In *Smith* v. *Maryland,* 59 *Id.* 71, a statute of the State of Maryland, which prohibited the taking of oysters from the tide waters of that state except with certain specified instruments, under a penalty of the forfeiture of the boat used for the purpose, together with her tackle, furniture, &c., was declared not to be violative of the clause of the federal constitution which confers upon congress the power to regulate commerce. In our own state, in the case of *Haney* v. *Compton,* 7 *Vroom* 507, it was held by the Court of Errors, affirming a decision of Mr. Justice Van Syckel at Circuit, that section 7 of the "Act for the preservation of clams and oysters," passed in 1846, which made it unlawful for any person, not a resident of the state, to rake or gather clams, oysters or shell fish in any of the waters of this state, on board any boat or other vessel, was not a regulation of commerce with foreign nations or among the states.

Many other cases of like import might be cited, but the multiplication of authorities is unnecessary. It is quite evident, from those already referred to, that it is entirely settled that the several states, by surrendering to the federal government the right to regulate commerce, did not part with the ownership of the fish in the tidal waters within their borders or with the right to regulate and control their taking.

What has been said practically disposes of the objection that the act violates the federal constitution by imposing "a duty of tonnage" upon such vessels as are entitled by law to engage in the business of catching, planting and growing oysters in these waters. The duty of tonnage which the constitution prohibits the states from levying is a duty or tax on a

ship, as such, which she is required to pay as a condition of her being allowed to enter or depart from a port, or load or unload a cargo, either upon her tonnage, her property or as a license to her officers or crew. *The North Cape,* 6 *Biss.* 505.

The statute under consideration imposes no such tax or duty. Under its power to regulate its own fisheries the state has conferred upon certain persons, who comply with conditions which it prescribes, the right to engage in the business of catching, planting and growing oysters upon lands of the state lying under tide water. One of these conditions is that every vessel used by the persons upon whom the state has conferred this privilege shall be licensed, and that, before a license is issued, a fee shall be paid therefor, graduated by the tonnage of the vessel; but the fact that the tonnage of the vessel is selected as the scale by which the amount of the license fee shall be determined does not affect the character of the imposition.

The test, as is suggested by Mr. Cooley, in his work on *Constitutional Limitation* (4th ed., p. 606), is whether or not the imposition is laid upon the vessel as an instrument of commerce; if it is, then the imposition is a tonnage duty, otherwise not. Applying this test, it is plain that no duty of tonnage is imposed by the statute. By it the state regulates a matter which is solely within its own control, viz., the right of cultivating and taking shell fish from its own lands under tidal waters, and requires the paying of a license fee on all boats engaged in that business. The license fee is, in effect, laid upon the business, and is a regulation of that business, for it is only from the boats used in that business that the license fee is exacted.

The next ground of attack is that the provisions of section 5 of the statute violate those articles of the federal constitution which guarantee equal civil rights to all citizens of the United States. This portion of the statute denies the privilege of taking a lease of the state lands under water to persons who are not citizens and residents of the state, except those who, at the time of the passage of the act, were holding and using the state's lands under these waters, and had oysters

planted thereon, under a usage, custom or existing law of the state. It also denies the privilege to citizens and residents who had not been such for twelve months preceding the making of the lease, except those in the situation just above mentioned.

In the case of *McCready* v. *Virginia, supra,* a statute of the State of Virginia, which regulated the cultivation of oysters in tidal waters of that state, was attacked upon similar grounds. In disposing of the question the Supreme Court of the United States declared that each state *owns* the beds of all tide waters within its jurisdiction; that a right of fishing is a *property right,* and not a mere privilege or immunity of citizenship; that the citizens of one state are not invested by the United States constitution with any interest in the common property of the citizens of another state, and that a state may grant to its own citizens the exclusive use of lands covered by water for raising oysters, and may prohibit their use for such purposes by citizens of other states.

This effectually disposes of the claim that, by this provision of the statute, citizens of other states are deprived of any rights or privileges guaranteed by the federal constitution. Nor is there anything in the claim that citizens of our own state are deprived of such rights and privileges by this legislation. As soon as it is conceded that the state is the owner in fee of lands under its tidal waters, its right to use them in such a way as in its judgment is best for the public interest necessarily follows; in exercising that right it may lease or sell such lands to whomsoever it may select for the purpose, and by doing so vest in its grantees or lessees the right to exclusively occupy the same.

The next objection made by the prosecutor to the validity of the statute is that, by its twenty-fifth section, violations of its provisions are made punishable by a fine not exceeding $1,000, or imprisonment in the state prison not exceeding five years, or both; and it is said that imprisonment for such a length of time is a cruel and unusual punishment for such an offence, within the meaning of the state constitution.

In disposing of this contention it is enough to say that the statute does not impose either a fine of $1,000 or a term of im-

prisonment for five years as a punishment for violating its provisions. It leaves the matter of the severity of the punishment entirely in the hands of the trial court, merely fixing a maximum beyond which the court shall not go. There is nothing either cruel or unusual in this.

The next objection urged against the validity of the statute is that, by its nineteenth section, it unlawfully delegates to the "commission" created by it power to pass ordinances for the purpose of doing the very thing which the statute itself professes to do, viz., for the regulating of the taking, catching and cultivating of oysters in the waters of Delaware bay and Maurice river cove, and, by section 25, makes the violation of those ordinances a misdemeanor. We do not deem it necessary for the decision of this case to determine whether, by the provisions of the statute, it is attempted to delegate to an inferior body powers which, under our constitution, can only be exercised by the legislature itself. The indictment brought here for review is not based upon the violation of an ordinance passed by the commission, but, as has already been stated, on a violation of the provisions of section 20 of the act itself. Admitting, for the purpose of argument, that this is the effect of these provisions, their invalidity will not nullify the whole act. They may be eliminated from it without impairing the residue; and there is no reason to suppose that the objectionable provisions constituted an essential motive to the enactment of the law. When this is the case, only the invalid provisions will be declared void. *Evernham* v. *Hulit,* 16 *Vroom* 53; *Rader* v. *Township of Union,* 10 *Id.* 509; *Stier* v. *Kosler,* 37 *Id.* 155.

The point taken by the prosecutor, that the statute violates that provision of our constitution which requires that every law shall embrace but one object, and that shall be expressed in the title, and is therefore void *in toto,* seems to us to be without support. The argument presented upon this point is as follows: "The declared purpose of the legislature in passing this act, as expressed in its title, was to regulate the oyster industry. The act goes far beyond any proper regulation of a business, and, by section 16 and section 20 creates two new

misdemeanors heretofore unknown to the law, and, by section 19, provides for the creation of unlimited misdemeanors at the will of a commission, whose prescribed qualification for appointment to such office is their interest in the business they are authorized to 'regulate.' No one seeking to ascertain what acts on his part might be criminal would be informed by the title of this act that it created new crimes."

The assertion that because the act, by sections 16 and 20, creates two new misdemeanors, it goes far beyond any proper regulation of the oyster industry, is hardly worthy of serious consideration. The enforcement of the rules which it adopts for the carrying on of that industry and the punishment for their violation is just as much a regulation of the industry as any other provision of the statute. *Stockton* v. *Central Railroad Co., 5 Dick. Ch. Rep.* 52; *Newark* v. *Mount Pleasant Cemetery Co., 29 Vroom* 168. And this is equally true with relation to the provisions of section 19, assuming that it is not invalid on the ground that the powers thereby delegated are obnoxious to the constitutional provision that the legislative power shall be vested in a senate and general assembly.

As to the contention that this act is a local or special law regulating the internal affairs of counties and granting exclusive privileges to individuals: The act is said to regulate the internal affairs of counties because it applies only to the tide waters of Delaware bay and Maurice river cove, which lie entirely within the counties of Cape May and Cumberland. But, although the area of application is limited to those counties, it clearly does not regulate their internal affairs, for it deals exclusively with property rights of the state, in which every citizen has an interest. That it confers exclusive privileges, however, is apparent. As was said in *State* v. *Post,* 26 *Vroom* 264, the right to plant and cultivate oysters on the lands of the state is a privilege, and inasmuch as the statute excludes from the enjoyment of that right everyone except the lessees of the state and their licensees, the privilege is an exclusive one. But this fact does not deprive the state of power to appropriate all or any part of its lands under water for the encouragement and protection of the planting and

cultivation of oysters, and to grant rights therein for that purpose. Its effect is to require such appropriation to be made by general laws, and it prevents the selection of individuals or corporations as the objects of the state's bounty to the exclusion of other citizens of the state. *State* v. *Post, supra.* Is the law, then, a special or local law, and does it exclude any of the citizens of the state from participating in the privileges which it confers?

A statute is not special or local merely because it authorizes or prohibits the doing of a thing in a certain locality. It is, notwithstanding this fact, a general law, if it applies to all the citizens of the state and deals with a matter of general concern. *Doughty* v. *Conover,* 13 *Vroom* 193. The application of this principle led this court, in the case cited, to the conclusion that a statutory provision which made it unlawful for any person to net fish during certain periods of the year "in the waters of Burlington and Atlantic" was not special or local, but general. The act before us, tested by this rule, is also general. Although it deals with the lands of the state under tide water only in certain localities, the matters which it regulates are of general, not local, concern. The lands themselves belong to the people of the state, not to the citizens of the counties where they are located.

Nor is there any selection, by the act, of favored individuals as the recipients of the state's liberality to the exclusion of other citizens. Every citizen is eligible to take a lease of these lands for the purposes to which they are appropriated by the act, when he has been such for a period of twelve months next before the lease is made, and has also been a resident of the state during that time; and no citizen can enjoy this privilege until his citizenship and residence has continued for the period mentioned.

The objection that the statute violates the provision of the state constitution which requires that "property shall be assessed for taxes under general laws, and by uniform rules" was not pressed at the argument. No tax upon property is provided for by it in any of its sections. The only imposition of a tax to be found in any part of it is the license fee

(if that can be called a tax) required to be paid by boats which engage in the business which the statute regulates. Such a tax is not affected by the constitutional provision invoked.

Finding that the act under which the indictment is found does not clash with the provisions of either the federal or the state constitutions, which have been referred to, we conclude that the motion to quash must be denied.