70  229
70  783
70  229
66E 401

THE MONTCLAIR MILITARY ACADEMY, DEFENDANT IN ERROR, v. THE NORTH JERSEY STREET RAILWAY COMPANY, PLAINTIFF IN ERROR.

Submitted December 8, 1903—Decided May 13, 1904.

1. When a demurrer is overruled and then withdrawn, the decision upon it cannot be reviewed on error; but if the final judgment appears by the record to rest solely on the pleading demurred to, or if a ruling at the trial on the question raised by the demurrer is presented in a bill of exceptions, that can be reviewed on error.

2. The right to construct and operate electric railways, with their incidental poles and wires, within the lines of public streets, for municipal travel, is included in the ordinary public easement and imposes no additional servitude on abutting property.

3. In order to obtain the consents required for the construction of an electric railway in a public street in accordance with the act of April 21st, 1896 (*Pamph. L.*, *p.* 329), the railway company agreed with an owner of land abutting on the street to give him, for his consent, a valuable option on the purchase of the company's bonds and stock. *Held*, that the agreement was in violation of the policy established in that statute and could not be enforced.

On error to the Supreme Court.

For the plaintiff, *John R. Hardin.*

For the defendant, *Coult, Howell & Ten Eyck.*

The opinion of the court was delivered by

DIXON, J.   The plaintiff, in the spring of 1898, was the owner of real property fronting on Bloomfield avenue, Mont-

clair, and the defendant desired to construct an electric railway through the avenue in accordance with the act of April 21st, 1896. *Pamph. L., p.* 329. By the terms of that act the permission of the governing body of the municipality is made a prerequisite for the construction of such a railway, and that body is without legal power to grant permission until there is filed with its clerk the written consent of the owners of at least one-half in amount of lineal feet of property fronting on the highway through which permission to build the railway is asked. Under these circumstances the plaintiff and defendant agreed together that the plaintiff would give its consent to the construction of the railway, on condition that the plaintiff should have the option of purchasing from the defendant $10,000 of its bonds and $20,000 of its stock for $10,000 in cash. Thereupon the plaintiff gave its consent, in writing. Subsequently the municipality granted the necessary permission and the railway was constructed.

The present suit was brought to recover damages for the defendant's breach of that agreement, and the plaintiff, after trial in the Essex Circuit, obtained judgment in the Supreme Court.

The validity of the agreement was first questioned by a demurrer to the third count of the declaration, but was affirmed in the Supreme Court on an opinion set forth in 36 *Vroom* 328. Thereupon the demurrer was withdrawn and a plea of the general issue was filed. This eliminated the demurrer from the record and precludes consideration of it as such. *Delaware, Lackawanna and Western Railroad Co.* v. *Salmon,* 10 *Id.* 299, 301: The count, however, remains, and if it appeared that the judgment rested upon that count its sufficiency would be a proper subject for review on this writ of error; but that does not appear, as the judgment rests upon a general verdict for the plaintiff, supported by other counts clearly good. But the same question in substance was raised at the trial by an exception taken to the charge of the justice presiding, and it is thus now

before us for determination. *Delaware, Lackawanna and Western Railroad Co.* v. *Salmon, ubi supra.*

The opinion of the Supreme Court sustaining the agreement is based upon an assumption that the plaintiff, as owner of land abutting on the avenue and presumptively entitled to the fee as far as the middle, had certain rights of property which would be invaded by the construction of the railway and its appendages, and for which, therefore, it could demand and contract for compensation. On that assumption the conclusion reached is supported by the English cases cited by the learned jurist who prepared the opinion and also by *dicta* in *White* v. *Manhattan Railway Co.,* 139 *N. Y.* 19, and other cases. But we think the hypothesis is not justified.

In *Halsey* v. *Rapid T. S. Railway Co.,* 2 *Dick. Ch. Rep.* 380, and *West Jersey Railroad Co.* v. *Camden Railway Co.,* 7 *Id.* 31, the Court of Chancery, and in *Kennelly* v. *Jersey City,* 28 *Vroom* 293, the Supreme Court, held that the right to construct and operate electric railways, with their incidental poles and wires, within the lines of public streets for municipal travel, was included in the ordinary public easement and did not impose any additional servitude on abutting property. The reasoning by which these decisions were maintained, as set forth fully by Vice Chancellor Van Fleet in the first of the cited cases, is entirely satisfactory, consequently when the legislature required the consent of a certain portion of the abutting owners to be obtained before such a railway could be built in front of their property, a gratuitous privilege or power was delegated to them. The reason for such delegation is not obscure.

Abutting owners have a certain relation to the public streets in front of their property, which, while it is subordinate to the public easement, yet places them on a footing unlike that of the rest of the community. Because of this relation special advantages and disadvantages accrue to them from street railways, and the legislative design clearly was that, unless it should be rendered probable that

these advantages would exceed the disadvantages with regard to any proposed street, the railway should not be there laid. This probability was to be indicated by the consent of the owners of at least one-half of the abutting land. For the decision of the matter thus contemplated, the legislature treated these owners as a class, every member of which had similar interests to subserve, interests that in some degree were common to all. Properly to meet the confidence thus reposed, it was incumbent on each member to bear in mind and be influenced by these common interests only, so that his judgment would be as fair toward his neighbors as it was toward himself. To permit any one of the class to barter for private and exclusive gain this power over the concerns of his fellows would be subversive of the benign purpose of the legislature in delegating it.

We think the contract set up by the plaintiff violates the public policy declared by the statute now under consideration, and it is therefore not enforceable. Authority to support this position may be found in *Smith* v. *Applegate, 3 Zab.* 352; *Kean* v. *Elizabeth, 6 Vroom* 351, 357; *Doane* v. *Chicago City Railway Co., 160 Ill. 22.*

The judgment of the Supreme Court must be reversed.

*For affirmance*—None.

*For reversal*—The Chancellor, Dixon, Garrison, Fort, Hendrickson, Pitney, Swayze, Bogert, Vredenburgh, Vroom, Green. 11.