THE MAYOR AND ALDERMEN OF JERSEY CITY, PLAINTIFFS IN ERROR, v. NORTH JERSEY STREET RAILWAY COMPANY, DEFENDANT IN ERROR.

Argued March 27, 1907—Decided July 2, 1907.

1. The Traction Companies act of March 14th, 1893 (*Pamph. L.*, *p.* 302; *Gen. Stat.*, *p.* 3235), authorizes companies incorporated thereunder to acquire and operate actually existing street railways, whether or not they are at the time being operated with legal authority.
2. Section 1 of the Traction Companies act of March 14th, 1893 (*Pamph. L.*, *p.* 302; *Gen. Stat.*, *p.* 3235), is a constitutional enactment.

On error to the Supreme Court.    For opinion of that court, see 44 *Vroom* 175.

For the plaintiffs in error, *George L. Record* and *Gilbert Collins*.

For the defendant in error, *Frank Bergen* and *Richard V. Lindabury* (*Sherrerd Depue* and *William D. Edwards* on the brief).

The opinion of the court was delivered by

SWAYZE, J.   The city of Jersey City seeks by this action to eject the North Jersey Street Railway Company from a portion of Montgomery street.   The railway company defends for that part of the street occupied by its street railroad, rails, ties, poles and wires suspended thereon and used in the operation of its street railroad.   A special verdict was found, upon which the Supreme Court ordered judgment for the defendant.

· The street railroad was originally built by the Jersey City and Bergen Railroad Company, which was incorporated by a special charter in 1859.   *Pamph. L., p.* 411.   In 1893 this company leased its property to the Consolidated Traction Company, which was incorporated under the general act of March 14th, 1893, for the formation of traction companies (*Gen. Stat., p.* 3235), and this company in turn leased the property in 1898 to the North Jersey Street Railway Company.

By the charter of the Jersey City and Bergen Railroad Company its corporate existence was limited to twenty-five years.   An attempt was made to extend this term, first, in 1879 for fifty years, under the act of 1876 (*Pamph. L., p.* 235; *Gen. Stat., p.* 972, *pl.* 302, 304), and then in 1902 perpetually, under the act of 1902.   *Pamph. L., p.* 630.   The original charter required that in constructing the railroad through Jersey City, the consent of the common council of that city should first be obtained, and that was done.

The plaintiffs' claim is that all right of the Jersey City and Bergen Railroad Company ceased with its corporate existence in 1884, and its franchise then lapsed, so that in 1893 its only property in the streets was the rails and ties.

The Supreme Court thought it unnecessary to decide this question, and found sufficient authority in the Traction act of 1893 to sustain the defendant's claim.

We are sensible of the gravity of the case which involves an important part of the railway system of the defendant company and the security of many millions of bonds, and involves also the rights of a great municipality in the public streets,

but we should reproach ourselves if the importance of the case led us to regard the questions at issue in any other light than as pure legal questions.    Legal principles are the same whether the interests involved are great or small, and all cases are entitled to the same careful consideration.

The arguments of counsel were directed to points, some of which we think need not now be decided.    Whether an action of ejectment will lie in a case like this, where the municipality is not excluded from the *locus in quo,* is a point not covered by our previous decisions, but since the plea of the defendant is, for the purposes of the action, an admission of possession (*Ejectment act,* § 13; *Gen. Stat., p.* 1284), this question may be eliminated, and the right of the city to maintain this action may, for the purposes of the case, be conceded.

We assume, also, in favor of the city that the consent required by the charter of the Jersey City and Bergen Railroad Company was limited to twenty-five years, and expired in 1884, and that the attempt to extend the corporate existence would not, even if successful, operate to extend the period for which the consent of the city was available.

The question raised as to the constitutionality of the acts of 1876 and of 1902 authorizing the extension of corporate existence in case they are to be construed as continuing the powers given by the original charters is of great importance. It probably affects many corporations of this state, and no opinion ought to be hazarded until the occasion absolutely requires.    The view we take renders unnecessary an opinion on this point.

We agree with the Supreme Court that the right of the defendant is properly rested on the Traction act of 1893.    To vindicate that right it is necessary to hold that the act, properly construed, applies to the case, and that it is a valid enactment within the constitutional limits of the legislative power. We must first determine what the legislature meant, and then whether the method adopted to effectuate that intent was within its constitutional rights.

Stripped of the words unnecessary to be quoted for the present purpose, the first section authorizes corporations

formed under the act to enter upon any highway upon which any street railway or other railroad operated as a street railway is or may be constructed, and to maintain and operate it, with the consent of the owner and of the persons operating the same; to construct lines of street railway through any highway, either by extension of existing railways or by the building of new lines thereon, and to use and operate them when constructed. Two classes of highways are contemplated by the act—highways where there is already an existing street railway, and highways where new lines are to be constructed. In the first case, the right is dependent upon the consent of those who own or operate the existing line. In the second case, upon the consent of the municipality. Since we assume, in the present case, that the consent originally given to the Jersey City and Bergen Company has lost its force, and no other consent of the municipality is shown, it is incumbent upon the defendant to bring Montgomery street within the first class, in which the statute authorizes it to operate upon obtaining the consent of the owner of an existing street railway. The question that arises is whether the statute refers to streets in which a street railway is actually operated, or only to streets in which one is operated by legal authority.

The language of the act is in itself broad enough to include all existing street railways, whether or not they are operated as such with legal authority. That it was intended to include all street railways in actual operation is indicated by the use of express words including railroads operated as street railways. There were in operation in Trenton and Atlantic City street railways operated by companies incorporated under the General Railroad law. These railroads were without right in the streets. *Thompson* v. *Ocean City Railroad Co.,* 31 *Vroom* 74; *Tallon* v. *Hoboken, Id.* 212, 214. They were actually operated, not as steam railroads, but as street railways, and were included in the act of 1893. The Jersey City and Bergen railroad itself was incorporated as a railroad with the power of eminent domain and the right to use other means of locomotion besides horses, which were then the usual means of traction employed by street railways. It comes within the

statutory language. of a railroad operated as a street railway. It is the actual operation which by the very words makes the statute applicable. This construction, which makes the act of 1893 apply to all cases where the existing conditions were similar, tends to make it general in compliance with the constitutional mandate, and is the construction which ought, therefore, to be favored if there were an ambiguity in the words themselves. Besides the ordinary and natural meaning of the words, and the need for generality in the legislation, other legislation indicates that it was the existence rather than the legality of the actual conditions that the legislature had in mind. The first general act for the incorporation of street railway companies is the act of 1886. *Gen. Stat., p.* 3216. Section 24 of that act provided that no company not organized under a special charter or under the act itself, or then actually owning, controlling and operating a street railway, should thereafter construct or operate a street railway. This act recognized three kinds of street railways—those operated by companies with a special charter, those under the general law, and actual street railways operated by companies not incorporated either under special charter or the general law for that purpose, and hence without authority of law.

The reference to actual street railways in the act of 1886 as a distinct class from railways operated under a special charter or the general law is important, because it indicates that when the legislature used the words "street railway" it must have looked rather to the actual facts than to the legal authority. The legal right might be only the property right in rails and ties, but the legislature evidently thought those rails and ties might properly be called a "street railway." The language amounts to a legislative definition of those words. Such legislative usage corresponds also with the popular meaning. No one would hesitate to call by that name a line of road actually in use for the ordinary purpose of a street railway, whether operated by legal authority or not.

The legislature itself has, moreover, removed all doubt on the subject by subsequent declaratory legislation. An act of 1896 (*Pamph. L., p.* 357) enacts that any corporation at-

tempted to be incorporated under the General Railroad act prior to the passage of the General Street Railway act, which had actually constructed and had in operation a street railway, shall be deemed and taken to be a street railway company duly incorporated as such.

We may also confidently appeal to the well-known object of the Traction act of 1893—an object apparent from its whole framework.   That object was to make possible the change in motive power from horses to other means of traction, especially electricity, the application of which to the purpose was then so recent.   There is no reason to believe that the legislature intended to make any distinction between lines of railway which were then actually serving the public and had the same need of improved methods of traction. Since 1893 there is no lack of reported cases where the rights of street railways have been in question.   It is significant that the present question has not heretofore been raised.

. If we entertained any doubt of the proper construction of the act of 1893 we should be reassured by the construction placed upon it by the public authorities of the city and state for ten years after its passage.   The special verdict shows that the street railway in question was assessed as main stem for the purpose of taxation under the Railroad Tax act of 1884, from that date until 1898; that annually since 1898 the tracks, ties, poles, wires and appurtenances have been assessed by the taxing boards of Jersey City, and that from 1901 to 1904 the defendant has paid taxes under chapter 195 of the laws of 1900, commonly called the Franchise Tax act.   The assessment of the tracks, poles and wires may have been only an assessment of so much personal property, regardless of their value as a completed plant, and the franchise tax may have been assessable without regard to the legal right to maintain this particular portion of track, but the assessment as main stem under the act of 1884 could only be made against property used for railroad purposes, and such an assessment after the expiration of the charter of the Jersey City and Bergen Railroad Company is a pretty clear indication that the taxing authorities of the state thought there was some-

thing more to assess than the bare physical equipment of rails, ties, poles and wires.

The city authorities brought an action against the Consolidated Traction Company to recover car license fees of $10 per car per annum from September 25th, 1893, to May 25th, 1898. The city claimed these fees under the ordinance of 1859, by which consent was given to the construction of the Jersey City and Bergen railroad. Although the action was not brought until 1903, and can therefore hardly be regarded as contemporaneous construction, it is proof that shortly before the present suit was brought the city authorities treated the railway as a street railway legally existing with the city's consent.

The plaintiffs attack the right of the legislature to pass the Traction act of 1893. It is not questioned that the legislature has power to control the highways of the state, and may grant the use of them to street railway companies without the consent of the municipalities. The attack is upon two grounds— *first,* that the act delegates to the owners, lessees or operators of a street railway, whether legal or not, the power of creating a franchise to operate it perpetually, a power which the legislature alone can exercise; *second,* that it violates the constitutional provision against private, local or special laws granting an exclusive privilege, immunity or franchise, or granting the right to lay down railroad tracks.

The first objection overlooks the true source of the franchise. That source is the act of the legislature. The legislature, having plenary power in the matter, has seen fit to grant the right to enter upon highways where there is or may be hereafter an existing street railway, upon condition that the consent of the existing railway shall be secured, just as it has granted the right in other highways upon condition that the assent of the municipality shall be secured. The courts are not concerned with the wisdom or lack of wisdom in imposing these conditions. It is enough for us that the legislature, having power to grant without condition, has chosen to impose conditions which seemed to it to be proper. Such a condition as is now complained of has been sustained by the

courts. *Morgan* v. *Monmouth Plank Road Co., 2 Dutcher* 99; *In re Thirty-fourth Street Railway Co.,* 102 *N. Y.* 343; 7 *N. E. Rep.* 172; *In re Atlantic Avenue Elevated Railway Co.,* 136 *N. Y.* 292; 32 *N. E. Rep.* 771.

The condition is not unlike that which requires the assent of owners of the abutting frontage before municipal action can be had favorable to the construction of the road. *Pamph. L.* 1896, *p.* 329. This assent is required because of the special advantages and disadvantages which accrue to the abutting owners from street railways, and not because of any property interest in the street. *Montclair Military Academy* v. *North Jersey Street Railway Co.,* 41 *Vroom* 229. The assent of an actually existing street railway may well be required, not only because of the special disadvantage to it, but because, even if it is without legal right to operate the road, it still has a property right in the rails, ties, poles and wires which even the legislature cannot take away. *Cleveland Electric Railway Co.* v. *Cleveland,* 204 *U. S.* 116 (at *p.* 142).

It was proper in all cases, and necessary in the case of most of our streets, very few of which are wide enough for two sets of tracks, to require the consent of existing street railways, even though they were operating without legal authority, before the legislature could exert its power to grant the right to the new company incorporated under the Traction Company act. But that consent is no more the source of the right than is the consent of abutting owners. The right comes from the legislative grant.

The objection to the constitutionality of the act goes deeper. It is urged that in substance a grant to a company organized under the Traction act of 1893, conditioned upon the assent of the existing company, amounts to an extension of the right of the existing company to occupy the street, since all it need do is to cause a traction company to be organized in its own interest and under its own control and grant its consent to that company and no other. No doubt such a result is possible. The effect is to create an exclusive privilege in the public streets and a right to lay down railroad tracks indirectly instead of directly. If the statute which

authorizes and makes possible such a result is private, local or special, it is in conflict with the constitution. Is the act of 1893 of that character? Certainly not in form. The words of the statute are as general as possible. It authorizes any three persons to organize a traction company and to acquire the necessary consents. It applies to all streets and highways, and to all street railways existing at the time of the passage of the act or thereafter. To secure the right to lay tracks in streets where none exist, a route must be filed with the secretary of state, and the consent of the proper municipal authority secured. The privileges offered by the act are open to all. No law can secure to all equal ability to avail themselves of its privileges. This act gives all an equal opportunity. It is suggested that the privilege should be awarded in an open competition to the highest bidder, but that plan gives an advantage to the man with the longest purse. The plan offered by the law gives the advantage to him who is most diligent and expeditious in filing the route. The former plan may now seem, in the light of the experience of fifteen years, to be the one that ought to have been adopted in the interest of our municipalities, but that is a question of expediency which the legislature had the right to determine. No matter how general may be the law granting rights, franchises or privileges, there must be something to constitute an acceptance of the right. It may be the filing of a route under the General Railroad law. It may be the organization of a company and the obtaining of municipal consent under the act for the organization of water companies, or the act for the organization of sewer companies. It may be, as suggested, a successful bid at a public auction. Upon compliance with the condition the right becomes exclusive, but the source of the right is the legislative enactment, and that is none the less general because only a few have the desire or the ability to avail themselves of its privileges. All that the legislature is forbidden to do is to adopt an arbitrary standard for those who are authorized to obtain the offered privileges.

The requirement of the consent of the existing company does indeed give an advantage to that company, but it is an

advantage arising naturally out of the actual situation, and not devised arbitrarily for the purpose of favoring one at the expense of another. The advantage not only arises naturally out of the actual situation, but, except in the case of streets wide enough for competing lines, is dictated by justice and the very necessity of the case, for the property right of an existing company, even though it is only a property in the physical equipment of the road, cannot be taken away.

The cases relating to the taking, cultivating and planting of oysters are good illustrations of the legislative power. In the earliest case (*State* v. *Post,* 26 *Vroom* 264) the court conceded that the state might grant an exclusive right to those who, by occupancy, planting or staking the ground, had a meritorious ground for the grant, and held the act bad only because the privilege was limited to those who had planted and staked the grounds at the time of the passage of the act. Later legislation has been sustained in *State* v. *Corson,* 38 *Id.* 178, and *State* v. *Price,* 42 *Id.* 249. The Traction act of 1893 avoids the difficulty which arose in State *v.* Post, and applies to all highways in which a street railway is now or may hereafter be constructed, and the privilege offered is based upon the meritorious ground of an already existing right of property. The reason that existing street railways may benefit by the legislation now in question is that they alone have the qualities which make them susceptible of the benefit. All who possess the same qualities may receive the same benefit, as far as the statute has to do with it, and any difference arises, not out of the statute, but out of the prior situation.

The distinction made by the act between streets where a street railway exists and those where there is none is also a rational distinction, having in view the objects of the legislation. In order to prevent the seizure of streets at the will of the traction companies, conditions were interposed calculated to limit the streets to those in which there was, or might reasonably be supposed to be, some public need of a railway. As to streets in which a railway existed, that necessity might fairly be supposed to have been once determined, as in fact it had been in this very case. As to others, the determination

was left to a municipal body. We see no reason why the legislature may not fairly base its action upon differences of character and needs already existing.

Numerous statutes have been sustained the object of which was to correct the defective execution of deeds or defective municipal action. *Den* v. *Downam,* 1 *Gr.* 135; *State* v. *Newark,* 3 *Dutcher* 185, 196; *State, ex rel. Walter,* v. *Union,* 4 *Vroom* 350, 355; *State, Vreeland, pros.,* v. *Bergen,* 5 *Id.* 438; *State, Kohler, pros.,* v. *Guttenberg,* 9 *Id.* 419; *Mutual Benefit Life Insurance Co.* v. *Elizabeth,* 13 *Id.* 235.

Such statutes operate to confer an exclusive privilege, or even to make good a title to land, but the legislative power has never been doubted. Their justification is found in the meritorious ground of an already existing situation.

The fact that no question of the constitutionality of the act of 1893 for the reasons now urged has been raised heretofore, notwithstanding the activity of litigation with reference to street railways, is as potent an argument in favor of the constitutionality of the act as in favor of its construction, to which we have already adverted. If the act were unconstitutional, the objection would certainly have occurred to the counsel who argued the case of *West Jersey Traction Co.* v. *Camden Horse Railroad Co.,* 8 *Dick. Ch. Rep.* 163, and the great judge who delivered the opinion in that case. We think the act is constitutional.

The judgment should be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, GARRISON, FORT, SWAYZE, REED, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN, DILL, J.J.   11.

*For reversal*—None.