CHARLOTTE B. BATHGATE, DEFENDANT IN ERROR, v. NORTH JERSEY STREET RAILWAY COMPANY, PLAINTIFF IN ERROR.

Argued December 12, 1907—Decided June 15, 1908.

1. In an action of tort, in which the declaration counted upon a trespass by the defendant upon plaintiff's land in entering thereon and putting electric wires through the plaintiff's trees, through which wires defendant sent electric current, whereby the trees were injured, where no justification was pleaded, and where the undisputed evidence showed the fact of trespass and the damage resulting therefrom, and there was nothing to show leave or license from the plaintiff, nor any evidence of other right on the part of the defendant—*Held*, proper to charge the jury that the defendant had no right to run the wires through the trees, and that in any event the verdict of the jury must be in favor of the plaintiff for at least nominal damages.

2. Where a street railway company ran its feed wires through the trees of an abutting landowner without leave or license of the owner—*Held*, that if this act was to be justified on the ground that the company was acting in the exercise of rights granted to it by the public, such a grant ought to have been adduced by the defendant.

---

On error to Essex Circuit Court.

For the plaintiff in error, *John A. Bernhard* and *Chauncy H. Beasley.*

For the defendant in error, *Louis Hood.*

The opinion of the court was delivered by

PITNEY, CHANCELLOR.   The judgment here under review is based upon the verdict of a jury awarding damages to the

plaintiff below for injuries to certain trees standing upon lands owned by her in the city of Newark, the injuries having been caused by electric current communicated to the trees through certain wires maintained by the defendant company in the street.

Plaintiff's declaration contains three counts. The first is in trespass for entering upon her land and putting electric wires through the trees, through which wires defendant, from April 1st, 1901, to August 1st, 1903, did send electric current, whereby the trees were injured and killed.

The second and third counts are in trespass upon the case, and rely upon the negligence of the defendant company in carelessly putting up, stretching and maintaining wires through the trees, and in negligently maintaining the wires with bad insulation.

Defendant did not plead a justification of the alleged torts, its only plea being the general issue.

The evidence at the trial showed that the plaintiff was the owner of a tract of land situate on the northerly side of Orange street, in the city of Newark, her title extending, presumably, to the middle of the street (*Friedman* v. *Snare & Triest Co.*, 42 *Vroom* 605, 609, and cases cited); that the tract had a frontage of something over two hundred feet on the street, with appropriate depth, and upon it was a single dwelling-house; that there was a row of shade trees standing upon plaintiff's sidewalk, near the curb line; that defendant was operating an electric railway in and along the street; that in the fall of the year 1901 it placed upon poles along the plaintiff's side of the street a cable, made up of numerous electric wires known as feed wires; that the cable was so placed as to come in contact with the trunks of one or more of plaintiff's trees and near to many of the branches, and there was evidence tending to show that the shade trees were injured and eventually killed by the electric current escaping from the feed wires. The undisputed evidence showed that in the year 1893 the street railway was operated with horses; that in 1894 or 1895 electricity was introduced as the motive power, the overhead trolley system being adopted; iron poles

were erected on both sides of the street at or near the curb line, with cross wires, extending across the street from pole to pole, supporting the trolley wires over the tracks, and feed wires were suspended upon the poles on one side of the street, and were connected with the trolley wires at intervals. It appeared, without dispute, that when it was proposed to equip defendant's car line upon Orange street with electricity, John Bathgate, who was at that time in charge of plaintiff's property, was opposed to the installation of the electrical equipment, and refused to give consent to the operation of an electrical street railway in front of the plaintiff's land, and that consent was finally given upon the agreement of the company, made by its general manager, that the company would place its feed wires on the south side of Orange street, opposite to plaintiff's property, so as to avoid injury to her trees. This agreement was observed in the original installation, the feed wires being placed on the poles on the south side of the street, and none upon plaintiff's land. This was done in the year 1894 or 1895. So the situation remained until the month of November, 1901. At this time the company placed a feed wire cable upon the poles on plaintiff's side of the street and through her trees, as already mentioned. This cable was not for the purpose of supplying the current to the trolley wires in Orange street, or elsewhere in Newark, but for conveying current to defendant's railway system in the city of Orange. In June, 1903, complaint was made by plaintiff to the proper officers of defendant company that this had been done contrary to the agreement made when the electrical equipment was established, and that her trees had been damaged thereby. She insisted that the obnoxious feed wire should be removed, and, after some correspondence between her counsel and the company, the wire was removed from her land in or about the month of August, 1903.

The first assignments of error to be considered are based upon two exceptions taken to the charge of the trial judge to the jury. One of these challenges the instruction that "this defendant had no right whatever to run that wire through those trees." The other challenges the instruction that in

any event the verdict of the jury must be in favor of the plaintiff for at least nominal damages. The learned trial judge seems to have based these instructions upon the ground that the company had agreed to put its feed wires upon the opposite side of the street. It is suggested here that this agreement was unenforceable because contrary to public policy. If, however, this were made to appear, so that the judge was wrong in the reason he entertained for the instructions given to the jury, yet there should be no reversal if the instructions were proper for other reasons.

From the record before us we are unable to determine whether the agreement referred to was or was not contrary to public policy. If the consent of the property owner that furnished the consideration for the agreement was such a consent as is mentioned in the act of May 16th, 1894 (*Pamph. L., p. 374; Gen. Stat., p. 3247*), which requires the consent in writing of at least one-half in amount in lineal feet of property fronting upon the street in which a street railway is to be constructed, it would follow, upon the principle enunciated by this court in *Montclair Military Academy* v. *North Jersey Street Railway Co.*, 41 *Vroom* 229, that the agreement would be contrary to public policy, and therefore unenforceable. That decision was based upon a later act, passed after the making of the agreement referred to in the evidence herein (*Pamph. L. 1896, p. 329*), but the policy of the act of 1894 respecting the giving of consents was manifestly the same.

But it does not at all appear that defendant's street railway was constructed in Orange street under the act of May 16th, 1894, and, by inference, the contrary appears, for it was already established as a horse railroad prior to the passage of that act, and at least as early as the year 1893. Under what legislative authority it was thus established does not appear. Nor does it appear by what authority electricity was introduced as the motive power. By "An act concerning street railroads," approved March 6th, 1886, and a supplement of March 11th, 1893 (*Pamph. L. 1886, p. 69; Pamph. L. 1893, p. 241; Gen. Stat., p. 3210, pl. 10*), horse railway companies were authorized to use electric motors as the propelling power,

instead of horses, upon first obtaining the consent of the municipal authorities, and those authorities were empowered to authorize the use of poles located in the public streets, with wires strung thereon, for the purpose of supplying the motors with electricity, and to prescribe the manner in which and the places where the poles should be located and the wires strung. This act did not require the consent of abutting property owners, but there is nothing in the evidence to show that the defendant obtained the consent or authorization of the municipal authorities under this act.

The evidence at the trial and the arguments of counsel here leave us in the dark upon the status of the parties at the time the agreement referred to was made, and from this it is sufficiently plain that the exceptions to the judge's charge that are now under consideration were not designed or understood to raise the question of the legal invalidity of the agreement.

However, since its validity is at least doubtful, we prefer to rest our affirmance of the judgment upon the ground that, irrespective of any such agreement, the undisputed evidence at the trial displayed the company in the light of a trespasser upon plaintiff's land when it placed the feed wire upon her side of the street, so that the judge was entirely correct in instructing the jury that the defendant had no right to run the wire through her trees; that it was guilty of a trespass in so doing, and was, in any event, liable for at least nominal damages.

Plaintiff's declaration founded her action upon a trespass to her realty, and not upon the breach of any agreement. The evidence showed that the property was hers, and that the company had placed the feed wire through her trees without her leave or license. If this was to be justified on the ground that the company was acting in the exercise of rights granted to it by the public, such a grant ought to have been adduced by it. But no license from the municipal authorities was either averred or proved, and certainly one could not be inferred in the face of the undisputed facts that when the poles and wires were first established in the street the feed wires

were located upon the side opposite to the plaintiff's property; that it was not until at least six years later that a feed wire was placed upon her property, and this was done not for the purpose of supplying current to trolley wires in the same street, or even in the same municipality, but for conveying current to the city of Orange, and that when plaintiff protested, and demanded the removal of this feed wire as having been placed upon her land without right, the company removed it.

We find no error in the instructions above referred to.

For like reasons, we think the trial judge did not err in declining to charge that the defendant had a statutory right to string the feed wire upon defendant's land for the operation of its road if it became necessary to furnish power for the same.

The only remaining questions discussed on the argument relate to certain rulings upon evidence. We have examined these without finding error, and they require no particular discussion.

The judgment under review should be affirmed.

*For affirmance*—PITNEY, CHANCELLOR, THE CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, BOGERT, VROOM, GREEN, DILL, J.J.    11.

*For reversal*—None.