**RALSTON et al. v. CITY OF MIDDLES-
BORO.**

**WOODSON et al. v. CITY OF MIDDLES-
BORO et al.**

Court of Appeals of Kentucky.
June 6, 1952.

Rehearing Denied Oct. 10, 1952.

.A. E. Funk, Jr., Middlesboro, Patterson & Wilson, Pineville, Squire Ogden and Wm. H. Abell, Louisville, for appellant.

Arthur Rhorer, Middlesboro, for appellee.

STANLEY, Commissioner.

The question is whether the City of Middlesboro may build and operate an electric plant and distribution system authorized by KRS 96.550 to 96.900, commonly called the "T.V.A. Act," without having negotiated with the Kentucky Utilities Company for the purchase of its plant now being operated in the city. KRS 96.580 provides that before a city may enter upon the "construction of any duplicating facilities", or condemn "an existing electric plant" it shall notify the owner of such a plant of its desire to purchase it, and, failing to reach an agreement upon the value, shall take certain further proceedings.

Middlesboro passed an ordinance on April 30, 1951, declaring its intention to build and operate an electrical plant and setting up a board for that purpose. The ordinance expressly states that the city does not intend to negotiate for the purchase of the system of the Kentucky Utilities Company for the reason that the city may at any time order its removal within six months. W. H. Ralston and two other taxpayers and customers of the utilities company, as plaintiffs, and the City of Middlesboro, as defendant, submitted an agreed statement of facts to the court under the provisions of Sec. 637 of the Civil Code of Practice stating there was a controversy as to whether the city could proceed with its plan without undertaking to purchase the

company's facilities. The stipulated facts are that (1) the company has for many years and does at the present time own and operate an electric distribution system in the streets of the city, selling electrical power to the residents; (2) that a judgment had been entered in the Bell Circuit Court adjudging the company had no franchise and that it must remove its facilities within six months after the city should pass a resolution requiring it to do so. The Utilities Company, J. H. Woodson and another taxpayer filed an intervening petition raising the question above stated. These intervenors also filed a separate suit incorporating the entire record of the suit in which the mentioned judgment had been entered, pleading invalidity of the present ordinance and praying injunctive relief. In the consolidated cases the circuit court adjudged the city is not required to negotiate with the company for the purchase of its plant. The losing parties appeal.

This court decided in 1931 that the Kentucky Utilities Company had no franchise for the occupancy of the city's streets and the operation of an electric plant in Middlesboro. City of Middlesboro v. Kentucky Utilities Co., 237 Ky. 523, 35 S.W.2d 877. The judgment giving effect to the decision, above recited, was entered pursuant thereto. By agreement, it included the provision for the removal of the company's facilities upon six months' notice. Such notice has never been given although there has been much intervening litigation between the parties or their representatives. The several cases reaching this court relating to attempts of the city to establish a municipal plant are collated in City of Middlesboro v. Kentucky Utilities Co., 284 Ky. 833, 146 S.W.2d 48. The statute upon which the present ordinance rests was enacted in 1942 after our several decisions.

The question turns on the legislative meaning of the phrase "an existing electric plant." The city takes the position that the company is a "mere usurper" or a "mere trespasser" and that it was not the legislative intent to protect a company which does not have "any legal authority to conduct its business" in a city. The company cannot be so regarded. Though having no franchise, it has remained and supplied the city and its inhabitants with electric power for 20 years by permission or as a licensee conducting a business that is legal. East Tennessee Telephone Co. v. Board Councilmen of City of Frankfort, 141 Ky. 588, 133 S.W. 564; Town of Hodgenville v. Gainesboro Telephone Co., 234 Ky. 419, 35 S.W.2d 888; Union Light, Heat & Power Co. v. City of Ft. Thomas, 215 Ky. 384, 285 S.W. 228. We think it clear that the present plant is in "existence" within the contemplation of the statute. Were it to cease operation, we suppose the people would quickly realize as a fact that it had existed. In Mayor of Jersey City v. North Jersey Street Railway Co., 74 N.J.L. 774, 67 A. 113, 114, the court construed a phrase in a statute which authorized a traction company to operate "existing street railways". The charter of a company which had been operating a street railway had expired and there was no franchise for its operation. The court held, "It is the actual operation which by the very words makes the statute applicable", and that "it was the existence rather than the legality of the actual conditions that the Legislature had in mind." The court observed "No one would hesitate to call by that name a line or road actually in use for the ordinary purpose of a street railway, whether operated by legal authority or not."

We are of opinion that the court misinterpreted the statute and should have adjudged that part of the ordinance declaring that the city would not negotiate for the purchase of the present plant of the utilities company to be of no effect.

The judgment is reversed.